1  JOSEPH H. HUNT
   Assistant Attorney General
2  CARLOTTA P. WELLS
   Assistant Director
3  MARSHA STELSON EDNEY
   Senior Trial Counsel
4  KATE BAILEY
   CAROL FEDERIGHI
5  Trial Attorneys
   United States Department of Justice
6  Civil Division, Federal Programs Branch
   1100 L Street, NW
7  Washington, DC  20005
   Tel.: (202) 514-4520
8  Email: marsha.edney@usdoj.gov

9  Attorneys for Defendants

10

                    UNITED STATES DISTRICT COURT
11
        NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION
12

13  City of San Jose, et al.,                Civil Action No. 3:18-cv-02279-RS

14          Plaintiffs,                       **DEFENDANTS' OBJECTIONS TO
                                              PLAINTIFFS' TRIAL DECLARATIONS**
15  v.
                                              Date: January 2, 2019
16  WILBUR L. ROSS, JR., *et al.*,            Time: 10:00 am
                                              Judge: Hon. Richard Seeborg
17          Defendants.

18

19

20

21

22

23

24

25

26

27                                          1

28  DEFENDANTS' OBJECTIONS TO PLAINTIFFS' TRIAL DECLARATIONS – No. 3:18-cv-02279-RS

1

2

3

4

Defendants United States Department of Commerce, Wilbur L. Ross, Jr., in his official

capacity as Secretary of Commerce, Census Bureau, and Ron S. Jarmin, in his official capacity as

performing the non-exclusive functions and duties of the Director of the Census Bureau, hereby

submit objections to the following portions of Plaintiffs' trial declarations.

5

6

**Trial Affidavit of Margo Anderson**

7

8

9

¶¶ 15-35.  These paragraphs of Dr. Anderson's  affidavit, which discuss the disclosure of

census information about Japanese Americans during World War II, are new and outside scope of

her expert report. Therefore, these paragraphs should be excluded.

10

11

12

13

Objections to Exhibits: Exhibit 1 is her expert report which should be excluded as hearsay

under 802. Exhibits 2, 3 and 4 support her new testimony and therefore should be excluded. In

addition, they should also be excluded as hearsay (802). Exhibit 4 should further be excluded for

lack of authentication (901).

14

15

**Trial Affidavit of Jill Bourne**

16

17

18

19

20

21

22

23

24

¶ 21. *"Because Branch Community Profiles are created using Census data, if the accuracy or quality of the Census data decline, the accuracy and quality of the Community Branch Profiles will likewise decline."*  Untimely disclosed expert opinion (702 and Rule 26(a)(2)(C)).  Ms. Bourne purports to offer a predictive opinion based on her experience and personal observations as the Director of the San Jose Public Library. Ms. Bourne is not offering lay opinion testimony, but instead, based on her specialized knowledge she has developed by virtue of her job, an opinions about how census data is used and could be affected constitute Rule 702 testimony.  Because Plaintiffs did not timely disclose this expert opinion, this testimony should be excluded.

25

26

27

Rule 701 precludes lay testimony based on specialized knowledge. *FiTeq INC v. Venture Corp.*, No. 13-CV-01946-BLF, 2016 WL 693256, at *3 (N.D. Cal. Feb. 22, 2016 (agreeing that

28

DEFENDANTS' OBJECTIONS TO PLAINTIFFS' TRIAL DECLARATIONS – No. 3:18-cv-02279-RS

1   defendants are correct to draw a line between lay and expert witness testimony). "Lay witness

2   testimony is governed by Rule 701, which limits opinions to those 'rationally based on the

3   perception of the witness.' Rule 702, on the other hand, governs admission of expert opinion

4   testimony concerning 'specialized knowledge.' " *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246

5   (9th Cir. 1997) (citing Fed. R. Evid. 701). Rule 701 "expressly excludes lay opinion testimony 'based

6   on scientific, technical, or other specialized knowledge within the scope of Rule 702.' " *Synthes USA,*

7   *LLC v. Spinal Kinetics, Inc.*, No. C-09-01201 RMW, 2011 WL 11709387, at *10 (N.D. Cal. Aug. 19,

8   2011) (citing Fed. R. Evid. 701(c)); *See also Calloway v. Contra Costa Cty. Jail Corr. Officers*, No. C 01-

9   2689 SBA, 2007 WL 134581, at *19 (N.D. Cal. Jan. 16, 2007), *aff'd*, 243 F. App'x 320 (9th Cir. 2007)

10  (excluding declaration testimony describing medical condition as improper lay testimony under 701):

11  *United States v. Tomasetta*, No. 10 CR 1205 PAC, 2012 WL 1080293, at *4 (S.D.N.Y. Mar. 30,

12  2012) (holding that testimony by research analysts about predictions about the effect of making

13  different disclosures or opinions based on generalized knowledge about the industry constituted

14  expert testimony); *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2016 WL

15  4410008, at *2 (S.D.N.Y. Aug. 18, 2016) (holding that testimony by an EMT and a state trooper

16  about why air bags didn't deploy in a crash required specialized or technical knowledge and thus

17  constituted expert testimony).

18  ¶ 22.  *"If the accuracy or quality of the Branch Community Profiles decline, I will be less able to make*

19  *appropriate decisions regarding resource allocation, collection management, and program management for the SJPL,*

20  *and less able to fulfill SJPL's goal of serving all members of the San Jose community."*  Untimely disclosed expert

21  opinion (702 and Rule 26(a)(2)(C)), for the same reasons noted above.

3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Trial Affidavit of Kristen Clements**

¶ 1.  *I believe that if the addition of a citizenship question on the 2020 Census leads to an undercount of the population of San Jose relative to other jurisdictions, the City will not receive the necessary of level of federal funding necessary to effectively implement critical affordable housing programs for our community.*  Lack of personal knowledge (602); improper lay testimony and undisclosed expert testimony (701/702; 26(a)(2)).  Ms. Clements purports to offer testimony based on her experience and professional observations as the Division Manager for the City of San Jose's Department of Housing.  Ms. Clements is not purporting to offer lay or expert opinion testimony.  The foregoing statements offer a predictive opinion implicitly based on technical conclusions regarding the impact of future population counts on technical funding algorithms.  Ms. Clements' declaration does not establish that she has personal knowledge of how these funding algorithms operate or experience in applying them (lack of personal knowledge) and, to the extent that these statements are based on specialized knowledge and calculations, Plaintiffs did not disclose her as a lay or expert witness (improper lay testimony and undisclosed expert testimony).

¶ 4.  *Over the past decade, the growth of the technology sector has brought many well-paying jobs to San Jose, but has also made housing much more expensive. New apartments that are built are class A luxury units with very few affordable units included in the properties, as in-lieu fees are less expensive than reducing high rents down to required affordable levels.*  Lack of personal knowledge (602); hearsay (802).  Ms. Clements has not established that she has personal knowledge as to the job market in San Jose (Ms. Clements' area is housing) or as to the reasons that luxury units are built instead of affordable units.

¶ 11.   *HUD uses Census and ACS data to make these allocations.*  Lack of personal knowledge (602); hearsay (802).  Ms. Clements has not established the source of this statement.  (The same

DEFENDANTS' OBJECTIONS TO PLAINTIFFS' TRIAL DECLARATIONS – No. 3:18-cv-02279-RS

objection applies to paragraph 14 of Ms. Clements' Nov. 2, 2018, Declaration (ECF No. 99-2), if the

Court admits that into the trial record.)

¶ 15. *San Jose's funding is allocated pursuant to Formula A. The population element of Formula A is calculated based on data reported by the United States Census Bureau (the "Bureau") based on the census conducted every ten years (the "Decennial Census") and the subsequent American Community Survey ("ACS").* Lack of personal knowledge (602); hearsay (802). Ms. Clements has not established the source of this statement. (The same objection applies to paragraphs 11 and 12 of Ms. Clements' Nov. 2, 2018, Declaration (ECF No. 99-2).)

¶ 20. *[I]f the Decennial Census underreports the population of San Jose relative to other participating jurisdictions, the City will receive less CDBG funding.* Lack of personal knowledge (602); improper lay testimony and undisclosed expert testimony (701/702; 26(a)(2)(C)—*See* discussion of paragraph 1 above. (The same objection applies to paragraph 23 of Ms. Clements' Nov. 2, 2018, Declaration (ECF No. 99-2).)

¶ 21. *[I]f the Decennial Census underreports the population of San Jose relative to other participating jurisdictions, the City will receive less HOME funding.* Lack of personal knowledge (602); improper lay testimony and undisclosed expert testimony (701/702; 26(a)(2)(C))—*See* discussion of **paragraph 1 above**. (The same objection applies to paragraph 25 of Ms. Clements' Nov. 2, 2018, Declaration (ECF No. 99-2).

### Trial Affidavit of Monique Melchor

¶ 20. *[I]f the Census Bureau were to provide lower-than-accurate population data for the City of San Jose relative to other participating jurisdictions, the City of San Jose would receive less funding through WIOA than it would if the data were accurate.* Lack of personal knowledge (602); improper lay testimony and undisclosed expert testimony (701/702; 26(a)(2)). Ms. Melchor purports to offer testimony based

on her experience and professional observations as the Director of work2future, Workforce

Development Board, Office of Economic Development for the City of San Jose.  Ms. Melchor is

not purporting to offer lay or expert opinion testimony.  The foregoing statement offers a predictive

opinion implicitly based on technical conclusions regarding the impact of future population counts

on technical funding algorithms.  Ms. Melchor's declaration does not establish that she has personal

knowledge of how these funding algorithms operate or experience in applying them (lack of

personal knowledge) and, to the extent that these statements are based on specialized knowledge

and calculations not acquired or performed in the course of her professional duties, Plaintiffs did

not disclose her as a lay or expert witness (improper lay testimony and undisclosed expert

testimony).

### Trial Declaration of Andrew Reamer

¶¶ 67-73.  These paragraphs in Dr. Reamer's affidavit are new and outside scope of his

expert report and therefore should be excluded. These paragraphs discuss new programs not

previously analyzed as part of his expert report. At his deposition, he admitted that he had not

performed any additional calculations for programs beyond the five he analyzed in the New York

case. *See* Transcript of Deposition of Dr. Reamer at 71:25-72:2.  Ex.1

Objection to Exhibits: Exhibits A and B are Dr. Reamer's expert report and curriculum vitae

which are hearsay and should not be admitted (802). Exhibit C is admissible only under Rule 703.

Exhibits D and E should be excluded because they are not relevant (401/403) and are hearsay (802)

if offered for the truth of the matter asserted.

### Trial Affidavit of Raymond Riordan

¶ 11.  *[A]ny net undercount of the population of the City of San Jose would negatively impact its ability to*

*obtain funding in the event of a disaster.*  Lack of personal knowledge (602); improper lay testimony and

6

undisclosed expert testimony (701/702; 26(a)(2)).  Mr. Riordan purports to offer testimony based on

his experience and professional observations as the Director of the Office of Emergency

Management for the City of San Jose.  Mr. Riordan is not purporting to offer lay or expert opinion

testimony.  The foregoing statement offers a predictive opinion implicitly based on technical

conclusions regarding the impact of future population counts on technical funding algorithms.  Mr.

Riordan's declaration does not establish that he has personal knowledge of how these funding

algorithms operate or experience in applying them (lack of personal knowledge) and, to the extent

that these statements are based on specialized knowledge and calculations not acquired or

performed in the course of his professional duties, Plaintiffs did not disclose him as a lay or expert

witness (improper lay testimony and undisclosed expert testimony).

### Trial Affidavit of Jeff Ruster

¶ 9.  Lack of Personal Knowledge.  Foundation.  Hearsay.  The basis for Mr. Ruster's

knowledge for the statement in this paragraph is information he obtained at a meeting, described in

the preceding paragraph, "with over 100 representatives from a number of community-based,

educational, government, and private sector organizations."  The statements made by these

representatives constitute inadmissible hearsay under Rule 802.   To the extent Mr. Ruster is simply

representing what the content of these statements and relying upon them for the truth of the matter

asserted therein, Defendants object to this paragraph.

¶ 12.  Lack of foundation. (601, 602).  The statement in this paragraph makes an

unsupported assertion that "outreach programs designed to encourage hard-to-count populations to

respond to the 2020 Census" will be required "to divert funds and use additional sources of City

funding not currently designated for census-related outreach."

¶ 14.  *"This consultant . . . likely will be required to divert some of that time and resources to facilitate participation in the 2020 Census, and likely will be required to divert some of that time and resources to address the effect of the addition of the citizenship question on hard-t-count populations."*  Lack of foundation and speculation (601, 602).  The statements quoted above are not based on personal knowledge and contain Mr. Ruster's speculative predictions about future events.

¶ 15:  Lack of foundation (601, 602).  The statement in this paragraph makes an unsupported assertion that "the City of San Jose expects to allocate at least an additional $300,00 in preparing and implementing outreach strategies for the 2020 Decennial Census."

Exhibit A:  Hearsay (802) (if submitted for the truth of the statements contained in the documents); Lack of ability to sufficiently authenticate (901).

**Trial Affidavit of Opal Tometi**

ECF 94-4 Declaration of Opal Tometi (incorporated by reference)

¶ 9:  *"BAJI's mission is harmed because the addition of the citizenship question to the 2020 Decennial Census creates a legitimate risk of a heightened undercount of immigrant populations. The impact of such an undercount, including a dilution of political power and a loss of federal funding, on the very immigrant communities that BAJI serves impedes its mission to advance these communities' access to racial, social, and economic justice."*  Untimely disclosed expert opinion (702 and Rule 26(a)(2)(C)).  Ms. Tometi purports to offer a predictive opinion based on her knowledge, experience and personal observations as the Executive Director of the Black Alliance for Just Immigration ((BAJI). Ms. Tometi is not offering lay opinion testimony, but instead, based on her specialized knowledge she has developed by virtue of her job, predictive opinions about the outcome of the 2020 decennial census.  Under these circumstances, Ms. Tometi's opinions are subject to the relevance and reliability criteria of Rule 702, and Plaintiffs' failure to disclose this testimony under Rule 26(a)(2)(C) should result in its exclusion.

8

¶ 10.   *"Additionally, because BAJI's members are typically concentrated in immigrant-rich metropolitan regions, the impact of an undercount will be disproportionately felt in these discrete locations."*   Untimely disclosed expert opinion (702 and Rule 26(a)(2)(C)), for the same reasons noted above.

¶ 11.  To the extent the statements in this paragraph are offered for the truth of the matter asserted, Defendants object to them as hearsay (802).

¶ 14.  Lack of foundation and speculation (601, 602).  The statements in this paragraph are not based on personal knowledge and contain Ms. Tometi's speculative predictions about future events.

¶¶ 15-17, 19. Untimely disclosed expert opinions (702 and Rule 26(a)(2)(C)), for the same reasons noted above.

Trial Affidavit

¶¶ 5-6.  Lack of Personal Knowledge; Foundation; Hearsay (601, 602, 802).  As reflected in these paragraphs, the basis for Ms. Tometi's knowledge are "news reports indicating that the government may try to change the law so as to allow the sharing of 2020 census information." These news reports constitute inadmissible hearsay.  ADD CITE To the extent Ms. Tometi is referring to and relying on these reports for the truth of the matters asserted therein, Defendants object to admission of these paragraphs.

Date:  January 6, 2019

Respectfully submitted,

JOSEPH H. HUNT
Acting Assistant Attorney General

BRETT A. SHUMATE
Deputy Assistant Attorney General

JOHN R. GRIFFITHS
Director, Federal Programs Branch

CARLOTTA P. WELLS

9

DEFENDANTS' OBJECTIONS TO PLAINTIFFS' TRIAL DECLARATIONS – No. 3:18-cv-02279-RS

Assistant Director

     /s/ *Marsha Stelson Edney*
MARSHA STELSON EDNEY
Senior Trial Counsel
KATE BAILEY
CAROL FEDERIGHI
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel.: (202) 514-4520
Email: marsha.edney@usdoj.gov

*Attorneys for Defendants*

10

DEFENDANTS' OBJECTIONS TO PLAINTIFFS' TRIAL DECLARATIONS – No. 3:18-cv-02279-RS

**Exhibit 1**

1    poverty level.

2    BY MR. TOMLINSON:

3         Q.    Right.

4         A.    So the poverty level might seem funny,

5    but the poverty level is itself census derived

6    because it relies on the consumer price index.  It

7    gets adjusted every year, and the housing portion of

8    the consumer price index is based on the American

9    Community Survey.

10         So programs that rely on the inflation factor

11    are not going to be as sensitive as ones that where

12    -- particularly when that inflation factor is applied

13    across the board, across the U.S., it will not be as

14    sensitive as programs in which it is specifically

15    saying this State gets this amount of money.

16         Q.    Okay.

17         A.    I want to add one thing.  You know,

18    we've been talking about the impact of a citizenship

19    question on the distribution of federal funds.

20    Census data get used for lots and lots of things

21    beyond that.

22         So if the CPI gets screwed up, that has

23    ramifications that go well beyond what we're talking

24    about.

25         Q.    Okay.  So you've only done calculations

1   of these five specific programs.  Correct?

2          A.    Correct.

3          Q.    And, as I understand it, your expert

4   opinion is that those five specific programs are

5   representative of the 24 total programs that use

6   geographic allocation formulas; is that correct?

7          MS. MORGAN:  Objection to form.

8          THE WITNESS:  I would say they're

9   representative of the principle that a differential

10  -- that programs that rely on either FMAP or State

11  share would be -- the grantees would differentially

12  affected by a differential undercount, and so it is

13  illustrative of the dynamic of the 24 programs, but

14  the 24 programs themselves are representative of a

15  larger group.

16  BY MR. TOMLINSON:

17         Q.    But you have not conducted any specific

18  analysis of any government program that does not use

19  a geographic allocation formula.  Correct?

20         A.    Correct.  All five of these use

21  geographic allocation.

22         Q.    So are you intending to offer expert

23  testimony as to the impact the differential

24  undercount in the decennial census would have on the

25  government programs that do not use geographic